1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DONALD GIER, SR.,                            No.  2:13-cv-0012-KJN

12              Plaintiff,

13        v.                                      ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under

20   Title II of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff

21   principally contends that the Commissioner erred by finding that plaintiff was not disabled from

22   May 1, 2007, plaintiff's alleged disability onset date, through the date of the ALJ's decision.

23   (ECF No. 15.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for

24   summary judgment.  (ECF No. 25.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 29.)

25   ////

26

27   _____
     [1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both
28   parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.
     (ECF Nos. 8, 9.)

                                                 1

For the reasons that follow, the court grants plaintiff's motion for summary judgment in part, denies the Commissioner's cross-motion for summary judgment, and remands the action for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

I.      BACKGROUND

Plaintiff was born on March 24, 1960, has an eleventh grade education, and previously worked primarily as a truck driver and a glue maker.[2]  (Administrative Transcript ("AT") 31-33, 62, 67.)  Around March 15, 2010, plaintiff applied for DIB, alleging that he was unable to work as of May 1, 2007, due to back injury, arthritis, depression, carpal tunnel, degenerative disc disease, hepatitis C, heart attack, high blood pressure, and "back haert kidneys liver mentel health" [sic].  (AT 12, 62, 127.)  On September 14, 2010, the Commissioner determined that plaintiff was not disabled.  (AT 12, 62, 71.)  Upon plaintiff's request for reconsideration, the determination was affirmed on December 13, 2010.  (AT 12, 67, 77.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on June 8, 2011, and at which plaintiff (represented by counsel) and a vocational expert ("VE") testified.  (AT 27-61.)

In a decision dated August 17, 2011, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from May 1, 2007, plaintiff's alleged disability onset date, through the date of the ALJ's decision.  (AT 12-21.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on December 6, 2012.  (AT 1-6.)  Thereafter, plaintiff filed this action in federal district court on January 2, 2013, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.     ISSUES PRESENTED

Plaintiff has raised the following issues: (1) whether the ALJ improperly discounted the opinion of examining physician Dr. Narinder Dhaliwal; (2) whether the ALJ erred in her assessment of plaintiff's public interaction limitations; (3) whether the ALJ erred in her

_____

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

1  assessment of plaintiff's reaching limitations; and (4) whether the ALJ erred in her assessment of

2  plaintiff's handling and fingering limitations.[3]

3       Furthermore, after plaintiff notified the court of a provisional grant of Supplement

4  Security Income ("SSI") benefits based on a subsequent claim, the court requested the parties to

5  address the impact, if any, of that provisional grant on the present action.  (ECF No. 19.)  The

6  parties have sufficiently briefed the issue in the Commissioner's cross-motion for summary

7  judgment and plaintiff's reply brief, respectively.  (ECF Nos. 25, 29.)

8  III.   LEGAL STANDARD

9       The court reviews the Commissioner's decision to determine whether (1) it is based on

10  proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

11  as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

12  evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

13  F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

14  mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

15  Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

16  responsible for determining credibility, resolving conflicts in medical testimony, and resolving

17  ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The

18  court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

19  interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

20  IV.   DISCUSSION

21      A.   Summary of the ALJ's Findings

22       The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard

23  five-step analytical framework.[4]  As an initial matter, the ALJ found that plaintiff remained

24  ———————————————

25  [3] Plaintiff's brief raised these issues in a somewhat different order.

26  [4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social
Security program.  42 U.S.C. §§ 401 et seq.   Supplemental Security Income is paid to disabled

27  persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as
an "inability to engage in any substantial gainful activity" due to "a medically determinable

28  physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel

1    insured for purposes of DIB through September 30, 2012.  (AT 14.)  At the first step, the ALJ

2    concluded that plaintiff had not engaged in substantial gainful activity since May 1, 2007,

3    plaintiff's alleged disability onset date.  (Id.)  At step two, the ALJ determined that plaintiff had

4    the following severe impairments:  lower back pain, hypertension, history of methamphetamine

5    abuse, and osteoarthritis of the left elbow.  (Id.)  However, at step three, the ALJ determined that

6    plaintiff did not have an impairment or combination of impairments that met or medically equaled

7    an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id.)

8        Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity

9    ("RFC") as follows:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b) except the
> claimant must alternate between sitting and standing to relieve pain
> or discomfort every hour for one to two minutes; can only
> occasionally climb ladders, ropes, and scaffolds, stoop, crouch, and
> crawl; can only frequently reach overhead bilaterally, handle, and

___

five-step sequential evaluation governs eligibility for benefits under both programs.  See 20
C.F.R. §§ 404.1520,  404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-
42 (1987).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the
> claimant is found not disabled.  If not, proceed to step two.

> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step
> three.  If not, then a finding of not disabled is appropriate.

> Step three: Does the claimant's impairment or combination of impairments meet or
> equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
> claimant is automatically determined disabled.  If not, proceed to step four.

> Step four:  Is the claimant capable of performing his past relevant work?  If so, the
> claimant is not disabled.  If not, proceed to step five.

> Step five:  Does the claimant have the residual functional capacity to perform any
> other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
evaluation process proceeds to step five.  Id.

4

> finger; needs to avoid concentrated exposure to extreme cold, extreme heat, vibrations, and hazards; and can only occasionally interact with the public.

(AT 16.)

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (AT 19.)  Finally, at step five, the ALJ determined, in reliance on the VE's testimony, that considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  (AT 20.)  Specifically, the VE testified that plaintiff would be able to perform the following representative unskilled occupations:  (1) routing clerk (with use of stool), a light work occupation with a specific vocational preparation ("SVP") of 2, and with 48,000 jobs nationally and 6,400 jobs in California; (2) assembler, a light work occupation with a SVP of 2, and 29,000 jobs nationally and 3,400 jobs in California; and (3) escort vehicle driver, a light work occupation with a SVP of 2, and 22,000 jobs nationally and 2,500 jobs in California.  (AT 20-21, 49-51.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from May 1, 2007, plaintiff's alleged disability onset date, through the date of the ALJ's decision.  (AT 21.)

B.      Plaintiff's Substantive Challenges to the Commissioner's Determinations

1.      Whether the ALJ improperly discounted the opinion of examining physician Dr. Narinder Dhaliwal

After the June 8, 2011 administrative hearing, but before issuance of the ALJ's August 17, 2011 decision, plaintiff submitted an assessment by Dr. Narinder Dhaliwal, who indicated that he had reviewed plaintiff's records and examined plaintiff on June 6, 2011, at plaintiff's counsel's request.  He found that plaintiff could only lift and carry 10 pounds for one-third of a day, and opined that plaintiff meets Listing 1.04A (related to disorders of the spine) and had been disabled from about May 1, 2000.  (AT 418-19.)  Plaintiff argues that the ALJ erred in rejecting Dr. Dhaliwal's opinion.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195,

1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

In this case, the ALJ gave "little weight" to Dr. Dhaliwal's opinion, noting that Dr. Dhaliwal "is not a treating source and the doctor saw the claimant only for evaluation at the request of his attorney.  In addition, this opinion fails to consider the claimant's activities of daily living, which indicate the claimant is able to do more than what Dr. Dhaliwal's opinion states." (AT 19.)

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization.  20 C.F.R. § 404.1527.

As an initial matter, the court agrees that Dr. Dhaliwal's status as a non-treating physician and his retention by plaintiff's counsel are not in themselves specific and legitimate reasons for discounting Dr. Dhaliwal's opinion as an examining physician.  Furthermore, although the ALJ referenced plaintiff's ability to help his son with homework, take his son to ball games, prepare frozen dinners, drive a car, and go grocery shopping (AT 17-19), the ALJ did not perform any meaningful analysis as to how specifically these activities, in light of their extent and duration, undermine particular aspects of Dr. Dhaliwal's opinion.  While it is certainly possible to interpret and extrapolate certain potential inconsistencies, it is the ALJ's role as the finder of fact to point to these in the administrative decision, instead of tasking the court with inferring such potential contradictions on appeal.  Nevertheless, the court ultimately finds that the ALJ's error was harmless, because Dr. Dhaliwal's opinion is so minimally supported and conclusory as not to warrant any significant weight.  See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error analysis applicable in judicial review of social security cases).

Indeed, Dr. Dhaliwal's opinion consisted of only about 1.5 pages in total and described plaintiff's medical history as having included a myocardial infarction in 2006, hypertension, lower back pain with a history of receiving an epidural injection, hepatitis C, and depression. (AT 418-19.)  Although Dr. Dhaliwal apparently examined plaintiff, his only clinical findings based on the examination were listed as "showed Trunk forward bending 30 degrees, unable squat, Left leg raising causes more pain."  (AT 418.)  He then performed a cursory, and at times hard-to-follow, summary of plaintiff's prior records, at certain points indicating his disagreement with the assessments of plaintiff's prior treating source(s) and the Commissioner's consultative examiner, Dr. Satish Sharma.  (AT 418-19.)  However, given Dr. Dhaliwal's minimal clinical findings, it is hard to give his conclusions much weight, especially when compared to the thorough report prepared by the Commissioner's consultative examiner, which by contrast is well supported by objective testing and clinical findings.  (AT 253-60.)  Furthermore, Dr. Dhaliwal concluded his assessment with a conclusory assertion that plaintiff meets Listing 1.04A and has been disabled since May 1, 2000, without providing any discussion of exactly how plaintiff meets Listing 1.04A's requirements or explaining how plaintiff nonetheless was able to work as a truck

1    driver until the early part of 2007.  (AT 32, 419.)

2         Therefore, although the ALJ's stated reasons for discounting Dr. Dhaliwal's opinion were

3    insufficient, it is readily apparent from the record that Dr. Dhaliwal's opinion is conclusory and

4    minimally supported, and should be rejected as such.  Because harmless error analysis applies in

5    judicial review of social security cases, the court will not remand a case to an ALJ simply to write

6    up a better-reasoned decision when the record evidence clearly shows that remand based on the

7    particular issue would be futile.

8              2.    Whether the ALJ erred in her assessment of plaintiff's public interaction

9    limitations

10        Plaintiff next argues that the ALJ erroneously limited plaintiff to occasional interaction

11   with the public.  (AT 16.)  That argument lacks merit.

12        In the absence of a mental functional capacity assessment by a treating psychologist or

13   psychiatrist, the only source to have personally examined plaintiff and issued an opinion as to

14   mental capacity was consultative psychiatrist Dr. Timothy Canty, who examined plaintiff on June

15   24, 2010.  (AT 261-64.)  After performing a thorough mental status examination and

16   psychological testing, Dr. Canty diagnosed plaintiff with "rule out mood disorder not otherwise

17   specified" and issued the following functional assessment:

18            He occasionally abuses marijuana but this does not seem to be a
              significant problem.  He is certainly cognitively able to manage
19            money.  His attention and concentration seems pretty good and I
              don't think he would have difficulty with fairly typical tasks from a
20            psychiatric standpoint.  However, I don't think he would tolerate
              highly stressful or fast-paced work.  Given his numerous physical
21            complaints and chronic insomnia that would prove overwhelming.
              I don't think he would have difficulty with a few coworkers,
22            supervisors, or incidental contact with the public.  However, I don't
              think he could tolerate a full-time public position.  His emotional
23            complaints would not prevent him from attending work.

24   (AT 263-64.)

25        Plaintiff suggests that Dr. Canty's recommendation of "incidental contact with the public"

26   is somehow more restrictive than the ALJ's occasional public interaction restriction.  (AT 264.)

27   However, plaintiff ignores the following sentence, in which Dr. Canty also states that he does not

28   think plaintiff "could tolerate a full-time public position," suggesting that something less than

                                              8

1   full-time public contact may be appropriate.  (Id.)  Plainly, Dr. Canty's assessment, viewed as a

2   whole, supports the ALJ's restriction of plaintiff to occasional public interaction.  To the extent

3   that any ambiguity exists, the court defers, as it must, to the ALJ's reasonable and rational

4   interpretation of Dr. Canty's opinion.

5                3.       Whether the ALJ erred in her assessment of plaintiff's reaching limitations

6              Plaintiff further argues that the ALJ improperly assessed plaintiff as being restricted to

7   frequent bilateral overhead reaching.  (AT 16.)  The court disagrees.  Even though consultative

8   examiner Dr. Satish Sharma, who personally examined plaintiff around June 18, 2010,

9   recommended limitations with respect to holding, feeling, and fingering objects (discussed further

10  below), he imposed no reaching limitations whatsoever.  (AT 253-60.)  Additionally, on July 7,

11  2010, the non-examining state agency physician, Dr. Wilson, reviewed the record and specifically

12  opined that plaintiff had no limitations with respect to reaching, including overhead reaching.

13  (AT 269, 271.)  The ALJ, for unspecified reasons, restricted plaintiff to frequent bilateral

14  overhead reaching, as opposed to assessing no limitation at all.  However, if anything, such

15  unarticulated reasoning gave plaintiff the benefit of the doubt, and any error was thus harmless.

16  Although plaintiff apparently feels that the RFC's reaching limitation is not restrictive enough, he

17  fails to point to any medical opinion in the record that actually assessed more restrictive, concrete

18  reaching limitations.

19                4.       Whether the ALJ erred in her assessment of plaintiff's handling and

20  fingering limitations

21             As noted above, the ALJ found that plaintiff could frequently engage in handling and

22  fingering.  (AT 16.)  Plaintiff contends that the ALJ failed to explain how she arrived at that

23  conclusion, which is inconsistent with the opinion of consultative examiner Dr. Satish Sharma,

24  who stated that plaintiff is limited to *occasional* holding, feeling, and fingering of objects with

25  both hands.  (AT 257.)  That argument has merit.

26             As the Commissioner points out, state agency physician Dr. Wilson found that plaintiff

27  was unlimited with respect to feeling, and was limited to frequent fingering and handling with his

28  bilateral upper extremities.  (AT 269.)  Thus, it appears that the ALJ's RFC was derived from Dr.

1    Wilson's assessment, although the ALJ purportedly gave both Dr. Sharma's and Dr. Wilson's

2    opinions "great weight" and never discussed the inconsistency between these opinions concerning

3    manipulative limitations.  (AT 18.)

4        This lack of analysis is problematic, because the opinion of a non-examining physician

5    (such as Dr. Wilson) is ordinarily insufficient in itself to reject the opinion of an examining

6    physician (such as Dr. Sharma).  To be sure, the opinion of a non-examining physician may serve

7    as substantial evidence when it is consistent with other independent evidence in the record.  See,

8    e.g., Lester, 81 F.3d at 830-31.  Indeed, on appeal, the Commissioner attempts to point to some of

9    plaintiff's activities – such as plaintiff's ability to help his son with homework, take his son to

10   ball games, prepare frozen dinners, drive a car, and go grocery shopping – as undermining Dr.

11   Sharma's opinion and supporting Dr. Wilson's less restrictive opinion with respect to

12   manipulative limitations.  The Commissioner asserts that the ALJ could reasonably have

13   interpreted these activities as indicating that plaintiff was not precluded from engaging in frequent

14   handling and fingering.  However, the ALJ failed to actually engage in any meaningful analysis

15   as to how specifically these activities are inconsistent with Dr. Sharma's opinion.  While it is

16   potentially conceivable that some of these activities may involve more than occasional handling

17   and fingering, it is far from obvious, particularly because the exact nature, extent, and frequency

18   of these activities were not discussed by the ALJ, nor are they readily apparent from the record

19   before the court.

20       The Commissioner's other proffered potential reasons for the ALJ's findings concerning

21   manipulative limitations are also unpersuasive.  For example, the fact that Dr. Sharma imposed no

22   reaching limitations has no bearing on his other assessed manipulative limitations.  Additionally,

23   just because Dr. Sharma assessed plaintiff with adequate range of motion in the shoulders,

24   elbows, wrists, and fingers (AT 256) does not mean that his assessment of manipulative

25   limitations is necessarily inaccurate.  A person may well have relatively normal range of motion

26   generally, but nevertheless be limited by other symptoms attributable to an impairment such as

27   carpal tunnel syndrome.  In this case, Dr. Sharma diagnosed plaintiff with bilateral carpal tunnel

28   syndrome, consistent with his finding of a positive Tinel sign at both the wrists.  (AT 257.)

1    Furthermore, although the Commissioner refers to an assessment by a physical therapist, Frank

2    Capello, indicating that plaintiff could return to work without restrictions, that assessment was

3    performed long before plaintiff's alleged disability onset date on July 17, 2000, in connection

4    with a low back injury.  (AT 301-02, 339-40.)

5        The court cannot find that the ALJ's failure to properly analyze plaintiff's handling and

6    fingering limitations was harmless error.  Here, the VE testified that the representative

7    occupations identified by the ALJ would likely be precluded if plaintiff were limited to less than

8    frequent handling and fingering, because "there are only a few occupations that don't require, in

9    the unskilled categories, frequent handling, fingering, etc."  (AT 58.)

10        Accordingly, the court remands the action pursuant to sentence four of 42 U.S.C. § 405(g)

11   for further evaluation and consideration of plaintiff's handling, fingering, and other related

12   manipulative limitations.  Upon remand, the ALJ shall further consider Dr. Sharma's opinion

13   along with the other record evidence, and if appropriate, may also obtain a further consultative

14   evaluation concerning plaintiff's manipulative limitations, including the potential effects of any

15   viable treatment for plaintiff's carpal tunnel syndrome and related impairments.

16        Importantly, the court expresses no opinion regarding how the evidence should ultimately

17   be weighed upon remand within the confines of the applicable law.  The ALJ may well ultimately

18   find that plaintiff is capable of frequent handling and fingering, but if so, such a finding must be

19   based on proper reasoning and supported by substantial evidence in the record as a whole.

20        5.    The potential impact of a provisional grant of SSI benefits based on a

21   subsequent claim

22        In light of the court's conclusion that the case must be remanded pursuant to sentence four

23   of 42 U.S.C. § 405(g), the issue of a sentence six remand is essentially moot.  Indeed, in his reply

24   brief, plaintiff suggests that he is truly seeking a sentence four remand and merely wanted to

25   notify the court of the subsequent provisional grant of SSI benefits.  (ECF No. 29 at 5.)

26        In any event, the record before the court suggests that a sentence six remand would not be

27   appropriate here.  The Ninth Circuit Court of Appeals has recognized that, at least under some

28   circumstances, a subsequent favorable decision may constitute new and material evidence for

1  purposes of a sentence six remand when the onset date of the subsequent favorable decision is in

2  immediate proximity to an earlier denial of benefits.  See Luna v. Astrue, 623 F.3d 1032 (9th Cir.

3  2010).  However, as the Commissioner points out, a subsequent favorable decision does not

4  automatically entitle a claimant to a sentence six remand, the propriety of which instead depends

5  on the particular record before the court.  Id. at 1035.  The result may vary based on the extent to

6  which the unfavorable and favorable decisions, even if in close proximity to each other, can be

7  reconciled by the record and other evidence before the court.

8      In this case, the ALJ's decision under review was issued on August 17, 2011 (AT 21), and

9  the notice of provisional grant of SSI benefits indicates that plaintiff was granted provisional SSI

10  benefits in August/September 2013.  (ECF No. 18-1 at 2 ["You meet all the rules to be eligible

11  for SSI beginning August 1, 2013.  Our rules do not allow us to pay SSI until the month after you

12  first meet all of our eligibility rules.  Therefore, the first month we can pay you is September

13  2013."].)  Therefore, the unfavorable and favorable decisions here are not necessarily in close

14  proximity to each other.  However, even if they were close in time, it is clear that the grant of SSI

15  benefits in this case was merely provisional in nature and not yet a final decision by the

16  Commissioner.  (ECF No. 18-1 at 1 ["While we are making a final determination about whether

17  you are disabled, we will send you payments for up to 6 months."].)

18      Accordingly, the court declines to remand the case pursuant to sentence six of 42 U.S.C. §

19  405(g).

20  V.    CONCLUSION

21      For the foregoing reasons, IT IS HEREBY ORDERED that:

22      1.  Plaintiff's motion for summary judgment (ECF No. 15) is GRANTED IN PART.

23      2.  The Commissioner's cross-motion for summary judgment (ECF No. 25) is DENIED.

24      3.  The action is remanded for further proceedings consistent with this order pursuant to

25  sentence four of 42 U.S.C. § 405(g).

26  ////

27  ////

28  ////

4.  Judgment is entered for plaintiff.

IT IS SO ORDERED.

Dated:  January 16, 2014

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE